STATE of Missouri, Respondent,

v.

Warren Allen MARTIN, Appellant.

No. 48397.

Supreme Court of Missouri,

Division No. 2.

May 8, 1961.

Alvin C. Brenner, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., Carl R. Gaertner, Sp. Asst. Atty. Gen., for respondent.

STOCKARD, Commissioner.

Upon trial by jury for the crime of robbery in the first degree by means of a dangerous and deadly weapon (see Sections 560.120 and 560.135, RSMo 1959, V.A.M.S.) defendant was found guilty and his punishment was assessed by the jury at imprisonment for a term of twenty years. He has appealed from the judgment and sentence imposed in accordance with the verdict. Although represented by counsel in the trial court, no brief has been filed in his behalf in this court. Our review extends to the essential record and the allegations of error in the motion for new trial. Supreme Court Rule 28.02, V.A.M.R. The sufficiency of the evidence to support the verdict is challenged. Therefore we shall set out the evidence in sufficient detail to rule that contention.

From the State's evidence the jury could reasonably find that about 8:45 o'clock in the evening of February 24, 1960, defendant entered a Safeway store in Jackson County, Missouri and went to a check out counter where Mr. Dwight Mahan was working. He asked for a package of cigarettes, and then pointed a gun at Mr. Mahan and said: "This is a hold-up. I want all your bills out of the register in a brown paper sack." Mr. Mahan gave defendant about $60 from the cash register, which money was in his custody and for which he was responsible, because, as he said, defendant "had a gun on me." Mr. Austin Ellis, the assistant manager of the store, approached a nearby check out counter and defendant called to him. When Mr. Ellis came near, defendant told him "That's close enough." Defendant had his hand in his right overcoat pocket and according to Mr. Ellis he "pointed the overcoat up at me." After receiving the money defendant left the store. Both Mr. Ellis and Mr. Mahan identified defendant at a police line-up and at the time of trial as the person who committed the robbery. Defendant signed a question and answer form of a statement in which he admitted that he committed the robbery. However, at the trial he testified that he signed the statement because he was already charged with a "former robbery," and he was told that "his brother had been identified on that robbery" and that if he would "sign the statement admitting this crime neither one of us would be filed on."

■ In these circumstances, as the jury could find them, the evidence clearly authorizes a finding of guilty of the charge against defendant. The assignment of error that the State failed to make a submissible case for the jury is overruled.

■ Defendant contends that there was no evidence to support the allegation in the information that an assault was made with a deadly and dangerous weapon, "to wit: gun loaded with gunpowder and leaden balls" because, he says, "no evidence was produced to show that an assault was made with a loaded weapon." The evidence does show that the automatic pistol used by defendant was loaded. In defendant's statement, admitted into evidence without objection, he admitted the commission of the robbery and that he used a .32 calibre automatic pistol. In that statement the following question and answer appear.

"Q. Was this 32 automatic pistol loaded at the time of the holdup? A. Yes, there was shells in the clip but I had not jacked one into the chamber."

However, assuming that an automatic pistol with shells in the clip but with none in the chamber is not loaded, the use in the information of the words "loaded with gun powder and leaden balls" was surplusage, State v. Kowertz, 324 Mo. 748, 25 S.W.2d 113, 115, and it was not necessary to prove such loading when the evidence establishes that the robbery was committed by means of a revolver or pistol or similar gun. "In the absence of countervailing testimony on the point [of whether the gun was

loaded], the jury was authorized to find that the revolvers or automatic pistols used in the robbery were what the robbers intended their victims to believe they were, to wit, dangerous and deadly weapons, and that their lives would be imperiled if they resisted the robbers who were armed therewith." State v. Kowertz, supra. There is no merit to this assignment.

■ Defendant next asserts that the "questioning of defendant by the State was highly prejudicial and improper in questioning regarding possession of a sawed off shotgun and by seeking to inflame and excite defendant while on the stand so as to cause him to lose his temper and thereby prejudice the jury against him." No objection whatever was made to the manner of examination of defendant except in one instance when a question was objected to on the basis that it was argumentative. That objection was sustained. The first mention of the shotgun came about in this manner. The police officer who took defendant's statement testified on direct examination for the State concerning the circumstances under which it was taken. On cross-examination he was asked by defense counsel whether any promises were made to defendant prior to the time he gave the statement. The officer answered that no promises were made, and in explanation he then added that defendant requested "that he be sent to the federal penitentiary for sawing off a shotgun, that he wanted to plead guilty and go to the federal penitentiary rather than go to trial here and go to the state penitentiary, and we presented that to the United States attorney, the fact he had taken a shotgun and sawed off the barrel and the stock, and the United States attorney advised us due to the fact that the State had a strong robbery case against the man they would not file the sawed-off shotgun charge." No motion was made to strike out this voluntary answer, and no other relief was requested. On cross-examination of defendant he was asked about the shotgun without objection. When he denied that he had seen "that sawed-off shotgun" the State produced a statement which defendant admitted he had signed, in which he admitted that he had sawed off the barrel and stock of a shotgun. The record does not reveal any improper questioning of defendant concerning the shotgun under the circumstances, not does it show any attempt to "inflame or excite" the defendant. We find no merit to this assignment of error.

■ Defendant next asserts that "the answers given by State's witnesses relating to the statement signed by defendant were not responsive to the questioning of attorney for defendant." This assignment of error is too indefinite to preserve anything for review. However, we have examined the transcript, and apparently reference is had to the voluntary statement of the police officer previously referred to when on cross-examination by defense counsel he referred to the sawed-off shotgun. The answer was not entirely responsive, but in some respects it was invited. In any event there was no motion to strike the answer, nor was the court asked to instruct the jury to disregard it. No prejudicial error resulted.

■■ Defendant says that the "closing argument of the State was highly prejudicial in that the prosecutor brought in his personal feelings toward defendant and stated that defendant was training his brother in crime when there was no evidence of same." Defendant does not identify the argument by which he contends the prosecutor injected his personal feelings into the case, and for that reason the assignment is too indefinite. However, we have read the oral argument and we do not find any portion of it to be objectionable. In addition, no objection whatever was made to any part of the oral argument of the prosecutor. The prosecuting attorney did not state that "defendant was training his brother in crime" or anything similar. He did say that "in his statement he [defendant] said he went out to rob a

store and he had his brother drive him. So that drags the brother into the robbery." The first statement was a correct recital of what defendant said in his statement, and the second was a logical conclusion from the facts. There is no merit to this exception.

■ Defendant asserts in separate assignments of error that "instructions 1, 2, 3 and 4 were prejudicial and erroneous;" that "the verdict of guilty was against the weight of the evidence;" and that "the punishment set by the jury was excessive." The assignment relating to the instructions is too general to preserve anything for review. State v. Hernandez, Mo.Sup., 325 S.W.2d 494; Supreme Court Rule 27.20, V.A.M.R. The same is true as to the contention that the verdict is against the weight of the evidence. State v. Hester, Mo.Sup., 331 S.W.2d 535; State v. Statler, Mo.Sup., 331 S.W.2d 526. The offense charged and of which defendant was found guilty is a capital offense. The punishment imposed was twenty years imprisonment. Obviously the punishment was not excessive as a matter of law. The statement of a conclusion in an assignment of error does not prove itself, State v. Taylor, Mo.Sup., 327 S.W.2d 880, and defendant sets forth nothing in his assignment from which it may be determined that the punishment is excessive.

We have examined those matters which we are required to examine under Supreme Court Rule 28.02, V.A.M.R., and we find that the indictment, the verdict, and the judgment and sentence is sufficient. The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.